700 So.2d 1315 (1997)
Michael S. CARONIA
v.
McKENZIE'S PASTRY SHOPPES, et al.
No. 97-CA-0681.
Court of Appeal of Louisiana, Fourth Circuit.
October 1, 1997.
*1316 Perrin C. Butler, Louis M. Butler, Butler & Butler, Metairie, for Plaintiff/Appellant.
Michael R. Zsembik, Waller & Associates, Metairie, for Defendant/Appellee.
Before Klees, Byrnes and Plotkin, JJ.
PLOTKIN, Judge.
Michael Caronia, the plaintiff in this matter, filed suit against Entringer Bakeries, Inc. and McKenzie's Bakery.[1] He alleges that he was injured in a McKenzie's Bakery during the perpetration of an armed robbery. Defendant, Entringer Bakeries Inc., filed an Exception of No Cause of Action which was heard on July 26, 1996. The trial court *1317 granted the Exception on July 30, 1996, without assigning written reasons, but allowing plaintiff ten days to amend his petition. Plaintiff did not amend his petition, thus his case was dismissed with prejudice. It is from the judgment of the trial court that plaintiff now appeals.

FACTS:
Michael Caronia alleged in his petition that he suffered injuries as a result of an armed robbery that took place on April 16, 1995 at the McKenzie's Bakery located at 901 Harrison Avenue. He claims that Entringer's and/or McKenzie's owed him a duty of protection from such attacks because that particular McKenzie's Bakery was the subject of prior robberies and was located in an area prone to robberies. The petition is unclear regarding how Mr. Caronia was injured during the armed robbery.

DISCUSSION:
The purpose of an exception of no cause of action is to determine the sufficiency in law of the petition. City of New Orleans v. Board of Com'rs, 640 So.2d 237, 241 (La. 1994). It questions whether the petition sufficiently alleges grievances for which the law affords a remedy. Lewis v. Aluminum Company of America, 588 So.2d 167, 169 (La.App. 4th Cir.1991), writ denied, 592 So.2d 411 (La.1992). The reviewing court is to make a de novo determination because the exception raises a question of law and the lower court's decision is based only on the sufficiency of the petition. When reviewing the exception, the well-pleaded facts of the petition are accepted as true. Id. Furthermore,
[p]leadings must be construed reasonably so as to afford litigants their day in court, to arrive at the truth, and to do substantial justice. When it can reasonably do so, the court should maintain a petition against a peremptory exception so as to afford the litigant an opportunity to present his evidence.
Kuebler v. Martin, 578 So.2d 113, 114 (La. 1991) (citations omitted). Thus, assuming that all the facts are true, the court must determine if the plaintiff has a cause of action.[2]
Plaintiff alleges in his petition that the particular McKenzie's where the armed robbery took place was the subject of prior armed robberies. Assuming this to be true, Mr. Caronia should be permitted to present evidence to support this allegation for the reasons cited herein.
In general, the duty owed by a business owner to its customers is that of reasonable care. This duty extends to keeping the premises safe from unreasonable risks of harm or warning persons of known dangers. Rodriguez v. New Orleans Public Serv., Inc., 400 So.2d 884, 887 (La.1981); Owens v. Regional Transit Authority, 559 So.2d 870, 871 (La.App. 4th Cir.1990).
A business owner does not normally owe a duty to its patrons to protect them from the criminal activities of third persons. However, there are instances when a business establishment will be held liable for injuries caused by the criminal acts of third persons. In Smith v. Walgreens Louisiana Co., Inc., 542 So.2d 766, 768 (La.App. 4th Cir.1989), this Court found that an owner of a business can be liable if the specific crime was foreseeable and if it was anticipated that the crime would occur at or near the time the incident actually happened. In that case, the victim was abducted from the Walgreens' parking lot. She presented deposition testimony from a security expert who stated that the particular area where the victim was attacked had the most crime of all of downtown New Orleans. Furthermore, the manager of Walgreens admitted in his deposition that this was a high crime area and that his car was vandalized in the same parking lot. This Court, therefore, found that the victim in that case presented adequate evidence to withstand the defendant's motion for summary judgment.
*1318 In Willie v. American Casualty Company, 547 So.2d 1075, 1083 (La.App. 1st Cir.1989), the First Circuit also recognized the duty of a business to protect patrons from the criminal acts of a third person in situations where the business "had particular knowledge of the impending occurrences of the criminal act." The victim in that case was abducted from a parking lot and then severely injured when shot by the offenders. The jury found the crime to be foreseeable because there was no security personnel, inferior lighting was used in the parking lot, and there were abnormally high occurrences of crimes against persons on the premises.
To determine if criminal activity was foreseeable, courts have considered whether similar incidents occurred on the premises. Smith, 542 So.2d at 768. The jurisprudence indicates that this determination is made based on the individual facts of each case. For example, in Romaguera v. Piccadilly Cafeterias, Inc., 648 So.2d 1000 (La.App. 5th Cir.1994), writ denied, 650 So.2d 1183 (La. 1995), the court found that one prior incident on the premises was adequate to provide foreseeability. In that case, there had been an attempted robbery inside the restaurant. Piccadilly responded by placing an armed security guard inside the restaurant, thus assuming the duty to protect. However, Romaguera and her family were attacked in the parking lot. She received serious injuries as a result of a gunshot wound. The court stated that "[t]he fact that there had been an attempted robbery inside the restaurant should, we think, make any reasonable person realize that such an attempt would be even more likely to occur outside the restaurant in the parking area." Id. at 1004-05. Furthermore, the plaintiff's expert provided evidence that the general location was unsafe.
Also, in Hanewinckel v. St. Paul's Property & Liability Insurance Co., 611 So.2d 174 (La.App. 5th Cir.1992), writ denied, 614 So.2d 65 (La.1993), the court found that the criminal acts of a particular person were foreseeable. The defendant, Ochsner Hospital, received information that a particularly described suspicious character was on hospital premises at 4:30 a.m. The court found that this information clearly created a situation where an attack was foreseeable and imminent. Security guards did not take any action based on that information, thus because an attack did occur, they were negligent by not attempting to prevent it.
But, in Taylor v. Stewart, 672 So.2d 302, 307 (La.App. 1st Cir.1996), the court held that there was no foreseeability, thus no duty to protect. In that case, the employee of a bar was injured by a third person, who was also a frequent patron. The evidence showed that while the employee of the bar and the third person had a documented history of arguing, the injured employee had recently told the owner of the bar that there would not be any more problems. Thus, the court found that there was no foreseeability that the two would argue again and that Taylor would be injured when the argument led to violence. Also, in Perkins v. K-Mart, 657 So.2d 725, 729 (La.App. 1st Cir.1995), writ denied, 662 So.2d 477 (La.1995), the court did not find foreseeability. In that case, the victim was attacked in the parking lot. Until then, there was only one prior instance of criminal activity in the K-Mart parking lot. That incident occurred two years before the victim's attack. The court held that K-Mart did not have knowledge of the intended robbery of the plaintiff, nor should it have such knowledge based on only one prior incident of criminal activity.
In Robinson v. Yousuf, 668 So.2d 436 (La. App. 4th Cir.1996), writ denied, 670 So.2d 1232 (La.1996), Robinson brought suit for injuries she sustained when shot at the defendant's gas station. Robinson had been purchasing gas when she heard gunshots in the distance. Within a minute, the victims of the gunshots pulled into the parking lot in a truck. The plaintiff went to the truck to try to help while another patron and the worker both called 9-1-1. After leaving the victims, the plaintiff was walking back towards the building when another truck pulled into the parking lot and began spraying the area with bullets. The plaintiff was shot, thus precipitating her lawsuit. This Court held that there was no significant prior crime at that particular gas station to create a duty to protect. The evidence showed that there *1319 had been at most five prior instances over a three year period where the police had to be summoned, but that they were all minor and did not involve violence. Furthermore, even if there was a duty to protect, it was unforeseeable that the shooters would enter the parking lot and begin shooting randomly.
In addition to a duty arising because criminal activity is foreseeable, a business owner can also be liable if he voluntarily assumes a duty of protection by hiring security guards to protect the business and its patrons. When a duty to protect others against such criminal misconduct has been assumed, liability may be created by a negligent breach of that duty. Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364, 1369, 1371 (La.1984). Carpenter v. Johnson, 664 So.2d 1354, 1357 (La.App. 1st Cir.1995). There is no indication in the pleadings that the particular McKenzie's had security personnel, thus the doctrine of assumption of duty is not applicable.
The defendant cites to Dye v. Schwegmann Bros. Giant Supermarkets, Inc., 627 So.2d 688 (La.App. 4th Cir.1993), writ denied, 634 So.2d 401 (La.1994), to support its position that third parties' criminal actions do not create liability on the part of business owners. The plaintiff cites to Mundy v. Department of Health & Human Resources, 620 So.2d 811 (La.1993) to support his position that business owners do have a duty to protect their customers from the illegal actions of third parties. However, both of these cases can be distinguished from the instant situation. In Mundy, the Department of Health & Human Resources had assumed the duty to protect others against criminal acts of third persons through the use of security guards. Thus, the relevant issue in that case was whether the security guards on duty the night the plaintiff was attacked breached their duty to act as reasonable security guards and, thus, were negligent. The court ultimately found that the victim's attack was the only criminal incident in the particular locale. This was insufficient to find a breach of the duty undertaken by the security guards. The court also found that even if there was a security guard posted at the particular elevator bank where the plaintiff was attacked, the security guard would not have prevented the attack because the perpetrator did not instigate the crime until he and the victim were alone within the elevator. Mundy, 620 So.2d at 814.
In Dye, this court refused to adopt a general duty owed by business entities to its patrons to protect them from attack by third persons, but found that Schwegmann's had assumed that duty. Irrespective of this assumed duty, the facts were analyzed to determine if Schwegmann's had breached its general duty of reasonable care. We found that it did not. This Court also analyzed the additional duty assumed by Schwegmanns to determine if it had been breached. We held that it had not been breached. The victim in Dye was shot and killed in the parking lot after leaving the Schwegmann's building. The evidence showed that the parking lot where the incident took place was regularly patrolled by security guards. Only minutes before the incident, a guard had been patrolling the row of cars where the victim was shot. Thus, the security guards were not negligent.
Dye and Mundy are distinguishable because they involved the business entity voluntarily adopting the duty to protect patrons from criminal activities perpetrated by third parties. The broader question in this case is whether McKenzie's had a duty to provide greater security because it should have foreseen the risk posed by third parties based on past criminal activities at that particular McKenzie's. If the plaintiff can prove that a sufficient pattern of prior criminal activity occurred at this particular McKenzie's, creating a situation whereby a future assault was foreseeable, McKenzie's may have a duty to protect from such criminal misconduct. The plaintiff's petition alleged that this McKenzie's had been the subject of prior crime. Thus, he has stated a cause of action and the case should not have been dismissed. The Exception of No Cause of Action is vacated and reversed.
REVERSED AND REMANDED.
BYRNES, J., concurs.
*1320 BYRNES, Judge, concurring.
I respectfully concur.
The petition refers to the failure of the defendant "to provide any security or, alternatively, inadequate security." The phrase "any security" is far broader than "security guard" and it is impossible at this stage of the proceedings to determine whether there might be something affecting the plaintiff's security which the defendant may have had a duty to provide, but failed to do so.
I would be more comfortable affirming the decision of the trial court which gives the plaintiff an opportunity to amend his petition, which opportunity plaintiff could utilize to flesh out the factual allegations of his petition. We have fact pleading in Louisiana, not the notice pleading allowed in federal court. However, I am cognizant of the requirements that we can't look behind the pleadings on an exception of no cause of action and that we should be liberal in our reading of the petition. Applying these standards I conclude that the plaintiff has technically succeeded in minimally stating a cause of action.
I concur for the purpose of responding to the discussion of security duties found in the majority opinion, and for the purpose of expressing my ongoing concern about the problems of imposing liability for random third party crime on private parties not in the business of law enforcement and not in the business of providing security against crime. This concern is focused primarily on those cases where the question of the duty to provide a security guard arises.
The majority states that "a business owner can also be liable if he voluntarily assumes a duty of protection by hiring security guards to protect the business and its patrons," citing Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984).
As I explained in my concurring opinion in Dye v. Schwegmann, 627 So.2d 688, 696 (La. App. 4 Cir.1993):
"In the Pizza Hut case the security guard precipitated a shoot-out in a fast food outlet resulting in the death of one patron and the severe wounding of another. There is a big difference between a security guard who creates a violent confrontation and one who merely fails to prevent a random act of violence from occurring. The Pizza Hut case should be limited to its own peculiar facts."
Of Pizza Hut's holding that there was no general duty to provide security guards I went on in Dye to note that: "The Court in Pizza Hut could not have intended to penalize a merchant with an inattentive security guard more than a merchant with no security guards." Dye, supra. The mere presence of any security guard, even an inattentive one, is more of a deterrent than none at all.
The problem with Pizza Hut is the statement:
"A duty of protection which has been voluntarily assumed must be performed with due care." Id., 455 So.2d 1364 (La.1984).
This language was not necessary in Pizza Hut. It was not a breach of a duty of protection that caused the injury in Pizza Hut. The complaint in Pizza Hut was not that the business owner failed to prevent crime, but that the business owner's guard actually precipitated the violence which led to customer injury. Thus the breach of duty in Pizza Hut was a duty not to endanger the customers. Pizza Hut should have been found liable based upon its general duty not to cause injury to its patrons. The duty not to injure in Pizza Hut was not a voluntarily assumed duty, but a duty imposed by law.
The "duty of protection voluntarily assumed" should be reserved for those cases where the business owner expressly or tacitly assumes the duty of protection by, for example, marketing security, such as the apartment complex that advertises, "Twenty-four hour security," in order to attract business;[1] or businesses such as banks or innkeepers where security is considered to be an intrinsic part of the service offered. Everyone in New Orleans knows that McKenzie's is a bakery, and no case has yet held that a bakery should be held to the same *1321 standard of security as are banks and innkeepers.
Thus my complaint about cases following Pizza Hut is that they have taken imprecise language out of context to reach the conclusion that the hiring of a security guard that you had no duty to hire creates a duty to hire a security guard and all that that implies. Thus as a general proposition there is no logic in suggesting that to undertake an act that you have no duty to undertake creates a duty to undertake that act. To put it another way, in those instances where there is no affirmative duty to act, but action is voluntarily undertaken anyway, liability should only be imposed when the defective performance of the act contributes to the injuries, not when the defective performance merely fails to prevent what there was no duty to act to prevent to begin with.
For example, you have no legal duty to save a drowning man. However, if you undertake to save him and fail to do so through your negligence, but do not cause him to drown or contribute to the drowning, should you be said to have assumed the duty of saving him and, therefore, be held responsible, where the victim is no worse off for your failed attempt at rescue than he would have been had you done nothing at all? There is no logical basis for imposing liability under such circumstances. However, if through your negligence your attempt at rescue contributes to the drowning you may have liabilitybut it will be based on the preexisting LSA-C.C. art. 2315 duty not to cause damage to anotherit should not be based on the illogical concept of "voluntary assumption of duty" where there is no evidence that you intended to assume a duty and no public policy to be served in suggesting that you did.
The other problem with security guards is that they represent more than a mere deterrent such as iron bars, locks, lights, and alarms. When they take active steps against third party criminals they move into the realm normally reserved to law enforcement, i.e., the sovereign. Courts should move cautiously in the area of imposing a duty to provide security guards. It smacks of a feudalistic society when central government did not exist or was not strong enough to provide law enforcement.
Because of the way in which the language found in Pizza Hut has subsequently been applied out of context we face the spectre Judge Landrieu warned us against in his concurring opinion in Dye, 627 So.2d at p. 697 of "a rule [that] would penalize those businesses which show concern for the well being of their customers while effectively rewarding those which do not."
If the theory for requiring a security guard is foreseeability, i.e., liability is imposed because a history of crime in the area makes the crime sued upon foreseeable, then it makes more sense to hold the sovereign responsible for law enforcement accountable, because who should have better access to crime statistics than the sovereign through its law enforcement agencies. Since it seems that trained law enforcement officials, who certainly have knowledge of where the high crime areas are, are unable to prevent random crime, we should think carefully before we hold private citizens responsible. In a society that theoretically frowns upon the concept of taking the law into one's own hands, would it not be, perhaps, more reasonable to say that, because the police department knows that a particular location is a high crime location, that it is the responsibility of that agency to station a patrolman at that location? This is tantamount to saying that a police guard should be posted at every location throughout the city that has any history of crime. This presents a funding problem. Since random crime is really a societal problem, then it is appropriate for society as a whole to determine what level of responsibility it wishes to assume for law enforcement, largely by making funding decisions through democratically determined levels of taxation, and by making collective decisions concerning the appropriate level of liability the sovereign should bear, if any, for breakdowns in the law enforcement systems. Otherwise, it seems that we are just venting the frustration we all feel about the proliferation of crime on the hapless innocent business owner who has the misfortune of standing in the path of a crime wave.
*1322 Moreover, as I pointed out in Dye when the courts impose duties they impose costs. The more duties we impose on businesses that operate in high crime areas the more costly we make it for them to operate in high crime areas. It has the same effect as imposing a location tax. Businesses are known to move from high tax locations to low tax locations. When we encourage businesses to move out of high crime areas we contribute to the further deterioration of those areas.
Crime is not like the slippery substance spilled on the floor or unsafe facility design problems that are not location specific. Those are problems that arise regardless of location. It is one thing to say that a business owner is responsible for the condition of his premises because he is in the best position to exercise that responsibility, and legally is probably the party only permitted to do so. But the same cannot be said for random third party crime. The courts need to remember that crime and crime prevention are societal concerns in general and specifically concerns of society in its sovereign manifestation in a way totally different from slippery substances and premises defects. Comparing crime to premises defects is like comparing apples to oranges. Requiring business owners to keep their floors clean does not encourage them to abandon neighborhoods. Making businesses responsible for crime because they are in a high crime neighborhood tells them they should move. Courts need to consider carefully the social utility of the decisions they render in the area of private crime prevention.
Also, careful consideration needs to be given to whether policies that encourage the proliferation of private security personnel might be harmful to the extent that they could serve to undermine support for public police services while simultaneously promoting a climate conducive to personal or vigilante law enforcement. A business and its employees with a private guard may see no reason to support increased funding for police. Then there is also the question of whether a private security guard assigned to one location prevents crime or only serves to deflect it to another location in a way that is not true of premises defects when corrected. More thought needs to be given to determine what the public policy goals in this area of the law should be.
To dispose of the security guard question by adopting the simplistic approach of "previous unrelated random crime makes future unrelated random crime foreseeable" does not do justice to a complex bundle of issues fraught with societal consequences. I urge the Louisiana Supreme Court when the opportunity arises to grant writs in this area of the law and to weigh these issues carefully with the depth of analysis and consideration that that court has the resources to do most effectively.
NOTES
[1] McKenzie's Bakery is a division of Entringer Bakeries, Inc.
[2] The La. C.C.P. provides in Article 931 that no evidence may be introduced to support or controvert an objection raised by means of a peremptory exception. Thus, the trial court was not to consider the facts alleged in the Memorandum in Support of the Exception and we will not consider these allegations either. Defendant alleged that the particular McKenzie's was in Lakeview, one of the "safest" areas of New Orleans.
[1] Which I might distinguish from signs directed not toward potential tenants, but toward would be transgressors, warning them of the peril of the presence of security.