JUDGE SANDRA CABRINA JENKINS
Defendant Jazz Casino Company, LLC, the owner of Harrah's New Orleans Casino ("Harrah's"), appeals the trial court's October 17, 2018 judgment awarding $601,689.31 in damages to plaintiff Irvin Magri, Jr., following a two-day bench trial. The suit arises from personal injuries sustained by Mr. Magri when a Harrah's employee abruptly moved a stool on which Mr. Magri was resting his foot while sitting at a black jack table.
Harrah's challenges the trial court's findings on three of the five legal elements of negligence. For the reasons that follow, we find that Harrah's owed a duty of reasonable care to Mr. Magri, Harrah's breached that duty, and the particular harm sustained by Mr. Magri fell within the scope of Harrah's duty to exercise reasonable care. We also find that the trial court was not clearly wrong in apportioning 70% of fault to Harrah's, and 30% to Mr. Magri. Accordingly, we affirm the trial court's judgment.
PROCEDURAL AND FACTUAL BACKGROUND
On the evening of January 18, 2012, Mr. Magri went to Harrah's to celebrate his birthday. Mr. Magri was seated on a high stool at the blackjack table to the left of the dealer, with an empty stool situated to Mr. Magri's immediate left. Because Mr. Magri recently had undergone a left knee replacement, he rested his left leg and ankle on the bottom of the empty stool, and faced the dealer. While Mr. Magri was playing blackjack, the pit boss called for an employee to empty a trash can in the area. When the employee, Nakeisha McCormick, attempted to empty the trash can, she moved the stool upon which Mr. Magri's left foot was resting. Mr. Magri claims that she yanked the stool, twisting his left foot and ankle. After the incident, Harrah's employees applied ice and wrapping to Mr. Magri's left foot.
On January 15, 2013, Mr. Magri filed suit against Harrah's and others alleging various theories of negligence, including failure to exercise reasonable care, failure to warn of an unsafe condition, and failure to properly train employees. On September 17 and 18, 2018, a bench trial was held. On October 17, 2018, the trial court rendered a judgment in favor of Mr. Magri and against Harrah's in the amount of $601,689.31, after reducing the amount of the original judgment by 30%, based on Mr. Magri's comparative fault. Harrah's timely appealed.
*356 Harrah's raises four assignments of error: (1) Harrah's owed no duty to protect or warn Mr. Magri because the risk that the empty stool could be moved was open and obvious to everyone who encountered it; (2) The trial court erred in finding that Harrah's breached its legal duty because a reasonably prudent person observing an empty stool would not have inspected underneath the stool before moving it; (3) The trial court erred in finding legal causation because the risk that a patron sitting on one stool would put his foot on an adjacent stool, and that his foot would be injured when the stool was moved, is not within the scope of a Harrah's duty to exercise reasonable care; and (4) The trial court erred in allocating only 30% of the fault to Mr. Magri since he placed his foot on an empty stool knowing that the stool could be moved at any time.
Mr. Magri's Trial Testimony
Mr. Magri testified that he had been to Harrah's four to ten times before the incident, and during these prior visits he saw "more people than he could count" sitting with their feet on adjacent stools. At the time of the accident, he was sitting at a blackjack table to the left of the dealer, with his left foot on the bottom rung of the empty stool next to him. Mr. Magri described his left foot as "intertwined" in the stool, with his foot inserted over the rung and then underneath it. He stated that he was facing the dealer with the majority of his body facing forward, while his left leg was on the rung of the adjacent stool. According to Mr. Magri, because he had a left knee replacement surgery on August 2, 2011, he was stretching his left leg out on the rung of the adjacent stool to relieve stiffness.
Mr. Magri testified that while he was playing blackjack, the pit boss called for environmental services to empty a trash can. Mr. Magri said that when a female employee arrived, she and the pit boss got involved in a heated argument that lasted thirty seconds or less. Mr. Magri said that after the argument, the employee "yanked" the stool two or three times, and after each time she yanked the stool, he yelled for her to stop. He said that when the employee pulled the empty stool out, his foot and ankle were tangled in it. Mr. Magri stated that after the third pull, the employee stopped yanking the stool.[1] He stated that he felt a sharp pain in his surgically repaired left knee and ankle.
Mr. Magri testified that before the accident, he did not ask any casino personnel if he could put his foot on the adjacent stool. He said that he was aware as a matter of "common sense" that another casino patron or employee could move the empty stool at any time, and he acknowledged that he did not need a sign to tell him that. He stated that he saw Ms. McCormick put her hands on the stool, but did not warn her that his foot was entwined in the stool.
After the accident, Mr. Magri completed a Guest Accident Report stating that the Harrah's employee "pulled the chair next to me (behind me) completely out with (unfortunately) my left foot attached causing *357 me to almost fall." Mr. Magri also completed a handwritten form on February 8, 2012, stating that the Harrah's employee "basically yanked the high stool away from me with my left ankle and leg entangled in same."[2]
Ms. McCormick's Trial Testimony
Ms. McCormick testified that she has worked as a cleaning specialist at Harrah's for ten years. She said that on the night of the accident, she was assigned to work in the Smuggler's restroom, which is near the blackjack table. According to Ms. McCormick, she received a call on the radio stating that a trash can in Pit 3 needed to be emptied, but the employee who normally emptied the trash can did not respond, so Ms. McCormick volunteered to pick up the trash. Ms. McCormick testified that she was not upset about picking up the trash, as it was part of her job. She denied that she had an argument with the pit boss that night. Ms. McCormick stated that because the blackjack tables are located next to one another, she had to go between two tables to empty the trash can. She described the space between the blackjack tables as "narrow." She said that as she approached Pit 3 to empty the trash can, an empty stool at the blackjack table blocked her path. When she saw Mr. Magri, he was seated to the right of the empty stool, and was facing the dealer. She said that in order to get past the empty stool, she pushed it toward the blackjack table one time. She stated that she did not see Mr. Magri's feet and did not realize that his left foot was on the footrest of the empty stool before she pushed. She stated that she had no reason to believe that Mr. Magri's foot would be on the empty stool. According to Ms. McCormick, when she pushed the stool, Mr. Magri screamed "my foot, my leg." She stated that she did not move the stool again after Mr. Magri yelled. She said that she asked Mr. Magri if he was okay, and he responded that he was fine. Ms. McCormick stated that she retrieved the trash can, emptied it, and then departed.
DISCUSSION
Duty/Risk Analysis
The duty/risk analysis is the standard negligence analysis employed in determining whether to impose liability under La. C.C. art. 2315. Chatman v. Southern Univ. at New Orleans , 15-1179, p. 10 (La. App. 4 Cir. 7/6/16), 197 So.3d 366, 374. Under the duty/risk analysis, the plaintiff must prove five elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element). Id. , 15-1179, pp. 10-11, 197 So.3d at 374. "A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability." Id. , 15-1179, p. 11, 197 So.3d at 374-75.
Harrah's challenges only the first, second, and fourth elements of the duty/risk analysis.
*358 Legal Duty
"The threshold issue in any negligence action is whether the defendant owed the plaintiff a duty." Rando v. ANCO Insulations, Inc. , 08-1163, 08-1169, p. 27 (La. 5/22/09), 16 So.3d 1065, 1086. Whether a duty is owed is a question of law for the court to decide, subject to de novo review. Id. ; Burch v. SMG Schindler Elev. Corp. , 14-1356, 14-1357, 14-1358, p. 6 (La. App. 4 Cir. 4/7/16), 191 So.3d 652, 658. "There is an almost universal duty on the part of the defendant in a negligence action to use reasonable care to avoid injury to another." Rando , 08-1163, p. 27, 16 So.3d at 1086. "In general, the duty owed by a business owner to its customers is that of reasonable care." Caronia v. McKenzie's Pastry Shoppes , 97-0681, p. 3 (La. App. 4 Cir. 10/1/97), 700 So.2d 1315, 1317. "This duty extends to keeping the premises safe from unreasonable risks of harm or warning persons of known dangers." Id. "[T]he basic standard is that the defendant must exercise the degree of care that we might expect from an ordinarily prudent person under the same or similar circumstance." Chatman , 15-1179, p. 14, 197 So.3d at 376. A reasonably prudent person will avoid creating an unreasonable risk of harm. Id.
Harrah's relies on the "open and obvious" doctrine in support of its contention that it owed no legal duty to Mr. Magri. " '[A] defendant generally does not have a duty to protect against that which is obvious and apparent.' " Marshall v. Jazz Casino Co. , 15-1192, p. 2 (La. App. 4 Cir. 6/29/16), 197 So.3d 316, 318. (quoting Bufkin v. Felipe's Louisiana, LLC , 14-0288, p. 7 (La. 10/15/14), 171 So.3d 851, 856 ). " 'In order for an alleged hazard to be considered obvious and apparent [the supreme] court has consistently stated the hazard should be one that is open and obvious to everyone who may potentially encounter it.' " Id. (alteration in original). Ms. McCormick testified that she did not see Mr. Magri's feet and did not realize that his left foot was on the footrest before she pushed the stool. She also testified that she had no reason to believe that Mr. Magri's foot would be on the empty stool. Mr. Magri testified that he did not inform anyone at the blackjack table that he was resting his foot on the adjacent high stool.
Under the circumstances, we find that the risk that a Harrah's employee would move a chair with a patron's foot entangled in it was not an open and obvious risk of harm, given the showing in the record that Ms. McCormick was the only person who knew Ms. McCormick was going to move the stool. As the "open and obvious" doctrine does not apply, we conclude that Harrah's, at a minimum, owed a legal duty to Mr. Magri to keep the casino safe from unreasonable risks of harm.
Breach of Duty
The second element, breach of duty, is a question of fact, or a mixed question of law and fact, and the reviewing court must accord great deference to the facts found and the inferences drawn by the fact-finder. Boykin v. Louisiana Transit Co. , 96-1932, p. 11 (La. 3/4/98), 707 So.2d 1225, 1231. Factual findings regarding breach of duty are subject to the manifest error standard of review. Burch , 14 -1356, p. 6, 191 So.3d at 658.
This Court has described the breach of duty standard as follows:
[T]o find that the defendant's conduct is substandard, you must find that an ordinarily prudent person under all of the surrounding circumstances would reasonably have foreseen that as a result of its conduct, some such injury as the plaintiff suffered would occur, and that defendant failed to do what an ordinarily prudent person would have done. You may find it helpful to ask yourself, *359 "How would an ordinary prudent person have acted or what precautions would they have taken if faced with similar conditions or circumstances?"
Chatman , 15-1179, p. 13, 197 So.3d at 376 (emphasis omitted).
Mr. Magri testified that it was common to see people resting their feet on an adjacent stool. Ms. McCormick testified that she did not look to see whether there was any impediment to moving the stool in the narrow space between the tables. A reasonably prudent person - particularly an employee working on the floor of a busy casino - moving a chair in a cramped space would have examined the stool prior to moving it to ensure that a customer would not be harmed. The trial court apparently found Mr. Magri's testimony that Ms. McCormick "yanked" on the stool several times, even after he screamed, to be credible. We find that the trial court was not clearly wrong in finding that Harrah's breached its duty to protect Mr. Magri from unreasonable harm.
Legal Cause
The fourth element of the duty/risk analysis is "legal cause" or "scope of protection." "[This] inquiry assumes that a legal duty exists and questions whether the injury suffered by the plaintiff is one of the risks encompassed by the rule of law that imposed the duty." Chatman , 15-1179, p. 19, 197 So.3d at 379. "The extent of protection owed to a particular plaintiff is determined on a case-by-case basis to avoid making a defendant an insurer of all persons against all harms." Id. This Court has described the "legal cause" or "scope of duty" inquiry as follows:
In determining the limitation to be placed on liability for a defendant's substandard conduct, the proper inquiry is often how easily the risk of injury to the plaintiff can be associated with the duty sought to be enforced. Faucheaux v. Terrebonne Consol. Gov't , 615 So.2d 289, 294 (La. 1993). Thus, a risk may be found not within the scope of a duty where the circumstances of that injury to the plaintiff could not reasonably be foreseen or anticipated, because there was no ease of association between the risk of injury and the legal duty. Lazard v. Foti , 02-2888, p. 6 (La, 10/21/03), 859 So.2d 656, 661.
Chatman , 15-1179, p. 19, 197 So.3d at 379.
Under the circumstances presented here, it was foreseeable that a patron sitting at a blackjack table would have comfortably rested his foot and leg on an adjacent empty stool. We find an ease of association between the risk that a seated patron's foot would be injured when an adjacent stool is "yanked" three or four times, and Harrah's legal duty to protect Mr. Magri from unreasonable harm.
Assessment of Fault
Harrah's contends that the trial court should have allocated more than 30% fault to Mr. Magri. A trial court's findings regarding percentages of fault are factual, and will not be disturbed on appeal unless clearly wrong. Purvis v. Grant Parish Sch. Bd. , 13-1424, p. 4 (La. 2/14/14), 144 So.3d 922, 926.
An appellate court's determination of whether the trial court was clearly wrong in its allocation of fault is guided by the factors set forth in Watson v. State Farm Fire and Cas. Ins. Co. , 469 So. 2d 967 (La. 1985). In Watson , the Supreme Court said that "various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct, (3) the significance of *360 what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought." Watson , 469 So.2d at 974. These same factors guide the appellate court's determination as to the highest or lowest percentage of fault that could reasonably be assessed. Watters v. Dept. of Soc. Servs. , 08-0977, p. 38 (La. App. 4 Cir. 6/17/09), 15 So.3d 1128, 1155.
The trial court found that the evidence showed that Harrah's negligence arose from Ms. McCormick's inadvertence. Ms. McCormick created a substantial risk of harm when she knowingly moved the chair without warning Mr. Magri or examining the area. The risk could have been avoided by Ms. McCormick by examining the stool beforehand to determine if anyone could be injured as a result of moving the stool.
The trial court also found that Mr. Magri's negligence arose from his own inadvertence, and that he had some comparative fault for placing his left foot on the adjacent empty chair. The trial court found that Mr. Magri should have expected that someone would attempt to move or utilize the adjacent empty chair. The trial court also considered that Mr. Magri did not ask permission to prop his foot on the chair, and did not inform anyone at the blackjack table that he was resting his foot on the high stool.
We find that a reasonable interpretation of the facts supports the trial court's finding that Harrah's, through Ms. McCormick, bears 70% of the fault. Accordingly, the trial court's assessment of 30% fault to Mr. Magri and 70% fault to Harrah's was not manifestly erroneous, and should be upheld.
CONCLUSION
Based on the foregoing we affirm the trial court's October 17, 2018 judgment, in favor of Mr. Magri and against Harrah's, in the amount of $601,689.31.
AFFIRMED

In an answer to an interrogatory, the incident was described as follows:
[The Harrah's employee] began pulling with a great deal of vigor and strength on the high stool directly next to plaintiff where plaintiff had his left ankle resting on it. Plaintiff immediately yelled to the lady to stop because she was hurting his foot and leg, all to no available [sic]. This employ [sic] continued to pull the stool with his left ankle still entwined on the rail of the high stool. Basically, and to the best of plaintiff's knowledge and belief, it took three or four times that she pulled vigorously before she ceased her actions.

At trial, Mr. Magri was shown a grainy, blurred black and white surveillance video and was asked to identify the images. Mr. Magri stated, "I cannot see ... I see vague images, but I cannot make out anybody either coming or going, quite frankly. I am sorry, but I just cannot make this video out."