512 So.2d 1206 (1987)
Mr. & Mrs. Raymond ST. PIERRE
v.
Mr. & Mrs. Alden LOMBARD, et al.
No. 87-CA-204.
Court of Appeal of Louisiana, Fifth Circuit.
August 26, 1987.
*1207 John T. Holmes, Curry & Blankenship, New Orleans, for plaintiffs-appellants.
Laurence E. Best, Peter S. Koeppel, Abbott, Webb, Best & Meeks, New Orleans, for defendant-appellee.
Before CHEHARDY, KLIEBERT and GRISBAUM, JJ.
GRISBAUM, Judge.
This is an appeal from the granting of a motion for summary judgment. We affirm.
This case arises from an incident in which the plaintiffs' son was stabbed at West Jefferson Stadium after a football game. He subsequently died of the wounds received. The plaintiffs seek to hold liable the Jefferson Parish School Board, which had leased the stadium to Archbishop Shaw High School for a Shaw O.P. Walker football game.
The question presented is whether an owner-lessor is liable to its lessee's guest for a third party's criminal conduct, absent actual or constructive knowledge.
FACTS
On September 22, 1986, the School Board moved for summary judgment. It also filed a memorandum in support of the motion containing legal argument and one deposition, that of Brother Jim Weigand, assistant principal of activities and athletic director at Archbishop Shaw High School at the time of the incident giving rise to suit. He understands that it is the duty of the team designated as the home team to provide security arrangements. Security is paid for from the gate receipts. Teams split profits 50-50. A total of 18 security *1208 officers were on duty the night of the incident: five regular and 13 reserve Jefferson Parish Sheriff's officers. Brother Weigand gave general instructions to the officers, leaving details to the officers inasmuch as "they are professional people." The security officers themselves decided how many persons needed to be where. Brother Weigand observed what went on but managed security matters in only a small way. He estimates, very roughly, that about 5000 students were at the game. The stabbing occurred on the more crowded Shaw side of the field, behind the stands, or so Brother Weigand understands from reports. He received no "reports prior to this game of any possibility of trouble between these two individuals." In his five years of experience, he recalls no incidents of violence in the stands at O.P. Walker-Shaw football games. He knows of no prior game incident with a weapon involved.
As to the contract with the Jefferson Parish School Board, Weigand reports that "The contract indicates that each school has a locker room and the field will be marked and so forth. That's all of the stadiums in Jefferson Parish which are handled by the Jefferson Parish Recreation Board." There appears in the record an affidavit avowing that the Jefferson Parish School Board has no security obligation under its lease of West Jefferson Stadium. Also appearing in the record is an opposition to the motion for summary judgment. Apparently, numerous depositions not appearing of record have been taken. The lease itself does not appear of record.
ANALYSIS
Summary judgment is provided for by La.C.C.P. art. 966 and should be granted when reasonable minds must conclude that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. Chaisson v. Domingue, 372 So.2d 1225 (La.1979). The burden is on the mover to establish that there are no genuine issues of material fact still at issue and that he is entitled to judgment as a matter of law. Vermilion Corp. v. Vaughn, 397 So.2d 490 (La. 1981). Any doubt is resolved against granting the summary judgment and in favor of trial on the merits. Vermilion, supra; Jewell v. Thompson, 386 So.2d 689 (La.App. 3d Cir.1980), writ denied, 393 So.2d 746 (La.1980).
Given this standard and having carefully reviewed the materials submitted in support of the motion and in opposition thereto, we discern only one viable factual issue to be presented, to wit: whether the School Board was on notice that occasional altercations are to be anticipated at high school football games.[1] Accordingly, we now inquire whether this issue is material to any theory of recovery.
As a general rule, the lessor-owner's liability to a third party (non-lessee) must be based on negligence, not strict liability. La.C.C. arts. 2315 and 2316; Reed v. Ramsay, 355 So.2d 618, 619 (La.App. 4th Cir. 1978). In determining negligence liability, our state courts have adopted a duty-risk analysis. See Dixie Drive It Yourself Sys. v. Am. Beverage Co., 242 La. 471, 137 So.2d 298 (La.1962). Under this analysis, in order that a defendant be held liable for his negligence, each of the following questions must be answered in the affirmative: (1) did he owe a duty to the plaintiff? (2) was this duty breached? (3) was the breach of duty a substantial factor in bringing about harm to the plaintiff, i.e., was it a cause in fact of the harm which occurred? and (4) do the risk and harm encountered by the plaintiff fall within the scope of the protection afforded by the duty breached?
As to the present situation particularly, our jurisprudence states that a landowner or a business owner is not the insurer of his guests' or patrons' safety. Accidents happen where no legal fault attaches. Giles v. Humble Oil & Ref. Co., 384 So.2d 569, 571 (La.App. 4th Cir.1980); Crochet v. Hosp. Serv. Dist. No. 1, 476 So.2d 516, 517 *1209 (La.App. 1st Cir.1985), writ denied, 478 So.2d 1235 (La.1985); Miguez v. Urban Dev., Inc., 451 So.2d 614, 617 (La.App. 5th Cir.1984), writ denied, 452 So.2d 1176 (La. 1984). While a "store owner" is under a duty to take reasonable care for the safety of its patrons, Rodriguez v. New Orleans Pub. Serv., Inc., 400 So.2d 884 (La.1981), this duty to protect does not extend to the unforeseeable or unanticipated criminal acts of an independent third person. Pennington v. Church's Fried Chicken, Inc., 393 So.2d 360 (La.App. 1st Cir.1980). Only where the owner or the management has knowledge or can be imputed with knowledge of the third person's intended conduct does a duty to protect patrons from the criminal acts of a third party arise. Davenport v. Nixon, 434 So.2d 1203 (La.App. 1st Cir.1983).
In light of our record facts and in applying our jurisprudential guidelines, we understand that the School Board undertook to lease, from all that appears of record, its physical premises, which were, it seems, well-suited to their intended purpose. Moreover, no oversight or immediate management function was assumed by the School Board, nor does custom dictate that such function should be assumed.[2] Perhaps, although we do not so decide, had the School Board known of imminent gang warfare or of some other specific potential for harm, it would then have had a duty at least to disclose such knowledge and perhaps to protect against it. However, no evidence indicates this potential existed. Rather, the decedent was stabbed by a third party, who, of course, must bear the principal blame for his voluntary act.
Weighing further the foreseeability and potential gravity of the harm against the cost of corrective measures and the social utility to be gained thereby, we appreciate that the School Board is an entity of notoriously limited funds, charged with expending as much of these funds as possible on education. To require it to expend monies in overseeing stadium security or in investing in metal detectors to search out knives or, in the alternative, to forego sporting events, would be manifestly unreasonable.[3] Therefore, we find the Board's duty is narrow and is operativeif at allin response to specific knowledge of potential danger. Thus, the only risk placed at issue lies outside the Board's duty. Accordingly, the trial court did not err in granting the motion for summary judgment.
For the reasons assigned, the judgment of the trial court is affirmed. All costs of this appeal are to be assessed against the appellants.
AFFIRMED.
NOTES
[1] The plaintiffs-appellants present a two-page excerpt from a deposition in which the deponent discusses security measures at Ehret-West Jefferson games and the recurrence of fights at those games.
[2] See Harris Drilling Co., Inc. v. Delafield, 222 La. 416, 62 So.2d 627, 629-30 (1952) for the role of custom in negligence assessment.
[3] Cf. W. Prosser, Handbook of the Law of Torts, 175-76 (4th ed. 1971): "there is liability [for the conduct of others] only if the defendant is negligent in not guarding against the possible crimewhich is to say, if the foreseeable risk is an unreasonable one, in the light of the burden of taking precaution." Also note that here, even if the School Board attempted to search fans, it might actually promote violence if crowds were large and became restive while waiting in line to enter the arena.