GOTHARD, Judge.
This appeal arises from a dispute between a group of condominium purchasers and the sellers-developers and several other defendants. The plaintiffs appeal the summary judgment which dismissed their claims against Hibernia National Bank (“Hibernia”), a lender to the developers, and Federal National Mortgage Association (“FNMA”), holder of promissory notes and mortgages on the condominiums.
The units were originally part of an apartment complex in Metairie and were renovated and converted into condominiums in the early 1980’s.. A group of owners became dissatisfied with the quality of the renovation and the depreciation in value of the condominiums. They filed suit against the developers and others on November 25, 1987, seeking to void the sales and cancel the mortgages, alleging fraud, misrepresentation and breach of fiduciary duty, and demanding a declaration that FNMA was not a holder in due course of the notes and mortgages.
Made defendants were the following: (1) Berkshire Development Corporation, the corporation that carried out the conversion to condominiums and sold the units to the plaintiffs; (2) Streuby L. Drumm, Jr., a 50% owner of Berkshire; (3) J.H. Harris, also a 50% owner of Berkshire; (4) Harris Mortgage Corporation, owned by Harris, which arranged for financing to the plaintiffs to buy their units; (5) Hibernia, a lender to Berkshire for purchase of the apartment complex and for its subsequent renovation; (6) FNMA, a quasi-government agency that purchased the plaintiffs’ notes and mortgages from Harris Mortgage Corporation; and (7) Gabe Mouldeoux, a construction inspector.
Both Hibernia and FNMA moved for summary judgment. The matter was heard on November 5, 1991, along with exceptions filed by several defendants. Judgment was signed on January 15, 1992, granting summary judgment to Hibernia and FNMA but denying the exceptions of remaining defendants and deferring consideration of them to trial of the merits. The plaintiffs’ appeal followed.
The appellants do not raise specific issues but maintain that the trial court erred in granting summary judgment in favor of Hibernia and FNMA.
This court, in Security Homestead Fed. Sav. v. Ullo, 589 So.2d 5, 7 (La.App. 5 Cir.1991), summarized the law on summary judgment as follows:
C.C.P. art. 966 B, in part, provides that a summary judgment
“shall be rendered if the pleadings, deposition, answers to interrogatories, and' admissions on file, together with the affidavits, if any, show that there *751 is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.”
The burden is on the mover to establish that there are no genuine issues of material fact still at issue and he is entitled to judgment as a matter of law. St. Pierre v. Lombard, 512 So.2d 1206 (La.App. 5th Cir.1987). Any doubt must be resolved against the mover, and against the granting of a summary judgment, and in favor of a trial on the merits. Chaisson v. Domingue, 372 So.2d 1225 (La.1979); Caplan v. Pelican Homestead and Sav. Assn., 542 So.2d 622 (La.App. 5th Cir. 1989).
Only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law based on the facts presented to the court is a summary judgment warranted. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980); Boue v. Loomis Armored, Inc., 575 So.2d 527 (La.App. 5th Cir.1991). The court must test the efficacy of the motion for summary judgment by closely scrutinizing the mover’s pleadings, while treating those of the opposing party indulgently. Manders v. Singleton, 558 So.2d 772 (La.App. 5th Cir.1990). When there are contradictions on factual issues created by depositions and affidavits, a party is not entitled to a summary judgment. Gatlin v. Coca-Cola Co., 461 So.2d 452 (La.App. 5th Cir.1984); Caplan v. Pelican Homestead and Sav. Assn., supra.
Any determination of the propriety of a grant of the motion for summary judgment must be made with reference to the applicable substantive law. Talamo v. Johnston, 554 So.2d 800 (La.App. 5 Cir.1989).
We shall discuss the dismissals of the two defendants separately.

Hibernia

The plaintiffs allege that the bank was engaged in a joint venture with defendants Drumm, Harris, and Harris Mortgage and that it breached its fiduciary duty to the plaintiff purchasers.
Joint venture. The trial judge stated, in his reasons for judgment, that:
... Hibernia cannot on this record be deemed to have been a party to a joint venture or partnership concerning the development or conversion of the former Berkshire Apartments to condominiums as alleged in the Petition. No intent or agreement to form such a joint venture, nor to share in profits and losses other than as an ordinary lender would, nor to exercise a proprietary interest in management of the enterprise on behalf of Hibernia or any other party has been shown, and no triable issue on any of those points has been established by Plaintiffs.
In the recent case of Riddle v. Simmons, 589 So.2d 89, 92 (La.App. 2 Cir. 1991), writ denied 592 So.2d 1316 (La.1992), the court set out the characteristics of a joint venture, as follows:
A joint venture results from the undertaking by two or more persons to combine their efforts, knowledge, property or labor to engage in and carry out a single business venture for joint profit. A joint venture is analogous to a partnership and controlled largely by the rules applicable to partnerships. There must be a sharing of the profits and losses with each party having some right of control over the business. The existence or non-existence of a joint venture is a question of fact and each case must be considered according to its circumstances. The principal difference between a partnership and a joint venture is that while a partnership is ordinarily formed for the transaction of a general business of a particular kind, a joint venture is usually, but not necessarily, limited to a single transaction, although the business of conducting it to a successful termination may continue for a number of years. No formal or specific agreement is required. Generally the relationship may be formed by an oral agreement and the existence of a joint venture may be inferred from the conduct of the parties and other circumstances. Grand Isle Campsites, Inc. v. Cheek, 262 La. 5, 262 So.2d 350 (1972); Shepherd v. Jay, 508 So.2d 650 (La.App. 2d Cir.1987), writ *752 denied, 513 So.2d 1209 (La.1987); American Fidelity Fire Insurance Company v. Atkison, 420 So.2d 691 (La.App. 2d Cir.1982); Latiolais v. BFI of Louisiana, Inc., 567 So.2d 1159 (La.App. 3d Cir.1990); Cajun Electric Power Co-op, Inc. v. McNamara, 452 So.2d 212 (La. App. 1st Cir.1984), writ denied, 458 So.2d 123 (La.1984).
A necessary element of a joint venture is the parties’ intent to enter into a joint venture. Guillory v. Hayes, 576 So.2d 1136, 1142 (La.App. 3 Cir.1991).
The gist of the appellants’ arguments in support of a joint venture between Hibernia and the developers is that, “This was not, and we repeat not, a standard lender/borrower transaction — at least in the conventional sense_” (Appellants’ brief, at 18.) The brief states that the project was “highly leveraged,” although Berkshire was incorporated with capitalization of $2,000.00. Hibernia exercised control over the project by requiring a certain number of condo units to be pre-sold, or else financing of the conversion would be canceled. They allege further that Hibernia had failed to require a performance bond, lien and privilege certificates, or acceptance of the building contract, which are required in conventional lending. Further, the loan agreement, providing for additional interest to Hibernia based upon the profits of the venture indicates the parties’ agreement to share in profits; and the bank has participated in the losses, because of the buildings’ depreciation in value.
Hibernia based its motion for summary judgment on the plaintiffs' failure to show any agreement or consent to enter into a joint venture with the developers. Attached to its memorandum in support is the affidavit of Lena del Buono Reeves, a loan administrator of the bank’s Commercial Real Estate Department, identifying Section 2.06 of the loan agreement dated February 9, 1984 between Hibernia and Berkshire. That section provides in pertinent part:
SECTION 2.06 Additional Interest. In addition to the Base Interst (sic) payable to the Bank pursuant to Section 2.02 of this Agreement and in consideration for the financing terms provided to the Borrower by the Bank under the Conversion Loan Agreements and this Agreement, the Borrower shall also pay the Bank additional interest (“Additional Interest”) in an amount equal to the GREATER OF (i) $50,000.00 OR (ii) ten (10%) percent of the Net Cash Flow for each Phase as determined in accordance with Section 2.05 of this Agreement. The Additional Interest due to the Bank hereunder shall be payable in a single payment which shall be due and payable on the Maturity Date (whether on the stated due date or on maturity by acceleration pursuant to the terms of this Agreement). The Borrower and the Bank hereby covenant, agree and stipulate that neither the obligation of the Borrower to pay Additional Interest as provided herein nor the manner prescribed for the calculation of such Additional Interest shall be construed to render the Borrower or the Bank as partners or joint venturers.
[[Image here]]
The bank argues that the provision that the “additional interest” obligation and its manner of calculation “shall not be con-* strued to render the Borrower or the Bank as partners or joint venturers” is an indication that there was no intent on its part to become a joint venturer.
The plaintiffs contend that the above provision showed a sharing of profits, while the bank points out that such an arrangement is authorized by federal banking regulations. The bank’s memorandum in support contains a page from 12 C.F.R., Ch. 1 (1-1-90 Edition) and cites § 7.7312 as specifically providing for such a consideration:
§ 7.7312 Loan agreement providing for share in profits, income or earnings.
A national bank may take as consideration for a loan a share in the profit, income or earnings from a business enterprise of a borrower. Such share may be in addition to or in lieu of interest. The borrower’s obligation to repay princi *753 pal, however, shall not be conditioned upon the profit, income or earnings of the business enterprise.
The plain language of the statute indicates that a share of the profits may be taken by a bank as consideration for the loan.
The bank argues further that there was no agreement to share the losses of the project. The plaintiffs’ motion in opposition states that “Hibernia shared in the proceeds and losses of the venture and will continue to do so, because of the depreciated value of the limits.... ” We are unable to follow this argument. Hibernia does not hold the mortgages on the units, and Berkshire’s indebtedness to Hibernia remains intact regardless of the value of the units.
Submitted with the plaintiffs’ memorandum in opposition to summary judgment is the affidavit of Clifton Buller, an officer of another local bank and former condominium association president. He attested that he had reviewed all the bank documents obtained by counsel for the plaintiffs and it was his opinion that the relationship between Hibernia and the developers “is construed as a joint venture.” The bulk of his affidavit was devoted to an interpretation of various provisions of the loan agreement.
La.C.C.P. art. 967 requires that affidavits supporting or opposing summary judgment be made of the affiants’ personal knowledge and set forth such facts as would be admissible in evidence. Opinions or conclusions of law do not fulfil the requirements of article 967.
Accordingly, we agree with the trial court that there has been no showing that Hibernia participated in a joint venture.
Breach of fiduciary duty. The trial judge stated in his reasons for judgment that, “Louisiana law is clear under the undisputed facts in this case, Hibernia owed no fiduciary duty or other legal duty directly to these Plaintiffs as alleged in the Petition....”
We agree that the plaintiffs have presented no facts that would suggest that Hibernia had a duty toward the individual purchasers. The plaintiffs purchased the units from Berkshire and obtained financing from Harris Mortgage. Hibernia’s financing was to Berkshire for purchase and renovation. Under Louisiana law a bank owes no duty to a third person with whom a bank customer (here the developers) does business. Guidry v. Bank of LaPlace, 740 F.Supp. 1208 (E.D.La.1990) and cases cited therein. See also LSA-R.S. 6:1124,[1] enacted by Acts 1991, No. 581, which applies to prior and present relationships and transactions involving financial institutions.

Federal National Mortgage Association.

The plaintiffs’ claim against FNMA is summarized as follows in the appellate brief, at 21:
Plaintiffs are not seeking damages against FNMA, the holder and owner of the mortgages, and are only seeking a declaration that there was and is an agency/principal relationship between Harris Mortgage and FNMA, and that the knowledge and acts of Harris, while acting in the triple capacity as a co-developer and lender as well as a qualified seller of FNMA that his knowledge is imputed to FNMA and any defense available against Harris Mortgage could likewise be charged to FNMA, thereby precluding them becoming a holder in due course.
*754 The Fourth Circuit, in Anderson Window & Patio Co. v. Dumas, 560 So.2d 971, 975 (La.App. 4th Cir.1990), provided a succinct summary of the characteristics of an agency relationship:
Under Louisiana law an agency relationship is created by express appointment of a mandatory under La.C.C. Art. 2985 or by implied appointment arising from apparent authority in order to protect innocent third parties. Roberson Advertising Service Inc. v. Winnfield Life Insurance Company, 458 So.2d 662 (La.App. 5th Cir.1984), Lou-Ark Equipment Rentals Company v. Houg Ah Fong, 355 So.2d 1019 (La.App. 4th Cir.1978), writ refused 357 So.2d 1167 (La.1978).
[[Image here]]
Agency may be created verbally, in writing, or by implication. Mitchell Engineering Co. v. Ronald A. Goux Inc., 413 So.2d 942 (La.App. 1st Cir.1982), writ denied 420 So.2d 173 (La.1982).
The essential test to determine whether implied agency exists is whether the principal has the right to control the conduct of the agent and whether the agent has the right and authority to represent or bond the principal. Craft v. Trahan, 351 So.2d 277 (La.App. 4th Cir.1977), writ refused 353 So.2d 1336 (La.1978). Apparent agency arises when the principal has acted in such a manner so as to give an innocent third party the reasonable belief that the agent has the authority to act for the principal. Davidson v. Board of Trustees, State Employees Group Benefit Program, 481 So.2d 708 (La.App. 1st Cir.1985); Jackson v. Wal Mart Properties, Inc., 452 So.2d 409 (La.App. 3rd Cir.1984). Implied agency is established by the words and conduct of the parties and the circumstances of the case. An agency relationship may be created even though there is no intention to do so. Sales Purchase Corporation v. Puckett, 417 So.2d 137 (La.App. 2nd Cir.1982), writ denied 421 So.2d 250 (La.1982).
The documents attached to FNMA’s motion for summary judgment indicate that FNMA and Harris Mortgage entered into a selling contract only. The affidavit of Addison Terry, Jr., vice president and counsel of FNMA states that he has personal knowledge of the facts and is familiar with the FNMA files regarding Harris Mortgage; that the parties entered into a selling contract, which authorized Harris Mortgage to act as a mortgage seller only, “subject to all terms and conditions of Title III of the National Housing Act, which authorizes FNMA to provide supplementary assistance to the secondary market for residential mortgages by providing a degree of liquidity for mortgage investments;” Harris Mortgage was not authorized to perform any acts other than mortgage seller.
The plaintiffs appear to base their allegation of the agency relationship upon the “servicing contract,” which is supplementary to the “selling contract.” In their memorandum in opposition they mention the “elaborate scheme under which Harris is to render services on behalf of FNMA, both in the underwriting and servicing capacity” and the “voluminous rules and regulations” which apply to mortgage sellers. They then conclude:
Considering the totality of the internal and external control that FNMA exercises over the operation of its mortgage seller and the detailed, prescribed conduct that it must follow, it is obvious that at all times, Harris Mortgage was an agent of FNMA and not an independent contractor....”
The supplementary servicing contract, attached to the plaintiffs’ memorandum, states the purpose of the FNMA and explains that the mortgages “are sold to FNMA by an entity approved as a mortgage seller by FNMA and generally are serviced by the same entity-” The contract then sets out the regulations under which the contract is to be performed. Nothing in the contract could be construed as authorizing Harris Mortgage to bind FNMA and the servicing was to be performed only in the mortgage company’s capacity as seller.
*755 The countervailing affidavit of John V. Marsiglia, an attorney for an unnamed bank, summarized the Harris Mortgage-FNMA contract provisions and stated that in his opinion the relationship between the parties was one of agency-principal. He stated that his opinion was based on:
... the duration of the contract, (indeterminate) the contractual relationship itself, the mutual obligations and duties between the parties, the complete right to exercise control of the servicer by FNMA, the profit to be derived from the transaction, and the auditing and censure provisions of FNMA which may result in a service contractor being suspended, fired or loss of privileges.
We agree with the trial judge that the documents submitted in opposition failed to raise a genuine issue of fact.
Finally, we consider the plaintiffs’ allegation that FNMA was not a holder in due course of the mortgages because of its knowledge of fraud or wrongdoing by agents of the developer. This contention has no merit because of the plaintiffs’ stipulation, which is attached to FNMA’s motion for summary judgment. The appellants stipulated to the following:
2) He, she or they, have no personal knowledge or independent knowledge of the legal relationship existing between the parties defendant in this case.
[[Image here]]
5) Specifically, they have no knowledge that Federal Mortgage Association had any information, records or knowledge, prior to the time that Federal National Mortgage Association acquired the note secured by the mortgages referred to in the attached schedule which would prevent Federal National Mortgage Association from being a holder in due course of the notes for value and in good faith.
In conclusion, we find that the trial court was correct in granting summary judgment, dismissing the plaintiffs’ claims against Hibernia National Bank and Federal National Mortgage Association and denying the exceptions filed by the remaining defendants. Accordingly, the judgment below is affirmed.
AFFIRMED.

. R.S. 6 § 1124. No Implied fiduciary obligations
No financial institution or officer or employee thereof shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility to its customers or to third parties other than shareholders of the institution, unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary. The fiduciary responsibility and liability of a financial institution or an officer or employee thereof shall be limited solely to performance under such a contract and shall not extend beyond the scope thereof. Any claim for breach of a fiduciary responsibility of a financial institution or any officer or employee thereof may only be asserted within one year of the first occurrence thereof. This Section is not limited to credit agreements and shall apply to all types of relationships to which a financial institution may be a party.