WALTZER, Judge.
STATEMENT OF THE CASE
On 30 September 1994, Kirk Lamkin sued Kenny’s Key West, Inc. (Kenny’s), for damages Lamkin allegedly sustained on 7 August 1994 when, as a customer, he was struck and thrown to the ground in the Kenny’s parking lot by a Jefferson Parish deputy working a detail for Kenny’s. Lamkin’s suit alleged Kenny’s negligence and intentional conduct.
Kenny’s answered the petition, denying all allegations except as to its status.
*771 On 1 April 1997, Lamkin filed a first supplemental and amended petition adding as defendant Kenneth Vincent, alleging that Vincent physically held Lamkin while the deputy struck him.
Kenny’s and Vincent answered and sought sanctions pursuant to La.C.C.P. art. 863.
On 12 May 1998, Lamkin filed a second supplemental and amended petition adding Geraci Insurance Agency and Penn-America Insurance Company as defendants. Lamkin alleged that Geraci was negligent in procuring valid and Insufficient insurance for Kenny’s premises and that Penn-America was Kenny’s premises liability insurer.
Geraci filed an exception of no right of action which the trial court granted on 29 July 1998. Penn-Ameriea filed an exception of no cause of action and answered, denying Lamkin’s allegations, denying coverage based on its policy’s assault and battery exclusion, and alleging that Lam-kin was responsible in whole or in part for his damages. Lamkin dismissed Penn-America as of nonsuit on 1 March 1999.[1]
On 30 March 1999, Kenny’s and Vincent filed a third party demand for breach of contract against Geraci and ABC Insurance Company, Geraci’s professional liability insurer, alleging Vincent and Kenny’s had contracted with Geraci and paid the required premium to procure applicable coverage effective 6 August 1994.
Geraci answered the third party demand with a general denial. On 10 September 1999, Geraci filed a motion for summary judgment.
Although Lamkin originally had requested trial by jury, the matter was tried without a jury on 18 February 2000. Following trial the trial court rendered findings of fact and conclusions of law on 5 April 2000 and entered judgment on 13 April 2000 in favor of Lamkin and against Kenny’s and Vincent, finding defendants to have been directly liable for Lamkin’s injuries, but not vicariously liable for the injuries caused by the deputy. The trial court awarded damages of | ,445,000 for pain and suffering; $2,278.67 for past medical expenses; $1400 for future medical expenses; nothing for lost wages; expert fees totaling $600 and all costs and interest from the date of judicial demand. The court apportioned fault as follows: deputy 60%; two unidentified bar patrons 10%; Vincent and Kenny’s 30%.
On 17 April 2000 the trial court entered judgment in favor of Kenny’s and Vincent on their third party claim against Geraci.
On 9 May 2000, Kenny’s and Vincent moved for a devolutive appeal of the judgment of 13 April 2000 insofar as it found Kenny’s and Vincent liable. The appellants do not assign error as to the quantum of damages or the percentage apportionment of damages found by the trial court. Geraci has not appealed the judgment of 17 April 2000, which is now final. Lamkin has not answered the appeal.
For the reasons that follow, we affirm the judgment of the trial court.
STANDARD OF REVIEW
Our review is governed by the manifest error standard. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Where there are two permissible views of the evidence, the factfin- *772 der’s choice between them cannot be manifestly erroneous or clearly wrong. When findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly |4wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Where documents or objective evidence so contradict a witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. However, where such factors are not present, and a factfinder’s finding is based on its decision to credit the testimony of one or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989).
STATEMENT OF FACTS
Having found the following factual findings to be supported by the record, we adopt them for purposes of this appeal:
On the evening of August 6, 1994, between the hours of 8:00 and 10:00 p.m., the plaintiff, Kirk Lamkin, ... went to the defendant, Kenny’s Key West, a bar located in Metairie.... [I]t is undisputed that both brothers [Kirk and Ryan Lamkin] were at the bar on the night in question. Plaintiff, Mr. Lamkin candidly admitted that he frequented the defendant bar and on the night in question had drunk one Long Island Ice Tea and part of another. At about this time, a female acquaintance whose name Mr. Lamkin could not recall, came up to him in the bar and accused him of molesting her nephew.
Mr. Lamkin testified that he denied her accusations and asked her and her friends to step outside.
Mr. Lamkin ... testified that while standing in the doorway of the bar, one of the female friends “got into his face” and so Mr. Lamkin pushed him [sic] away. Mr. Lamkin testified that at that point, Mr. Kenny Vincent ... came up behind him and pinned his arm to his side. Mr. Lamkin stated that Mr. Vincent asked him to leave and pushed him into the parking lot.
|fiMr. Lamkin testified ... that when he was in the parking lot, he continued to “exchange words” with the female and her friends and that officer Rick Kerwin of the Jefferson Parish Sheriffs Office, who was working a detail assignment at the bar, grabbed him and threw him against a vehicle, stuck his finger in his throat and “cursed him out.”
Mr. Lamkin stated that Mr. Vincent was in the parking lot while officer Ker-win was assaulting and battering him. Mr. Lamkin and his brother ... testified that Ryan attempted to break it up but someone grabbed him. Eventually, Ryan was able to reach the plaintiff and began to walk to the car. Apparently, while walking to the car, plaintiff continued to argue with the female and her friends and he was hit from behind.
Thereafter, the plaintiff was stuck [sic] on the head with a billy club and was knocked unconscious.... He testified that Mr. Vincent was still standing in the parking lot. And, he further testified that no one called an ambulance or the police so Ryan took him to the emergency room at East Jefferson Hospital.
Mr. Ryan Lamkin testified via deposition and his testimony supported that of his brother in most respect [sic].... Ryan Lamkin testified that there were two officers in the parking lot.
*773 He stated that while officer Kerwin, the older officer, assaulted and battered the plaintiff the other officer just stood by and watched. Mr. Ryan Lamkin testified that he knew that these two individuals were police officers because they were wearing dark blue uniforms.
... Ryan Lamkin testified that while he was attempting to carry the plaintiff to the car, plaintiff was hit by an unidentified male and then by officer Kerwin. The next time Ryan Lamkin saw the plaintiff the officer had plaintiff against a van in the parking lot and then plaintiff was put face down on the hood of a vehicle.
Ryan Lamkin testified that he began arguing with the officers and asked them to let him take the plaintiff home. They finally complied and released the plaintiff. It was then that Ryan Lamkin noticed that the plaintiffs teeth were chipped and his chin was bleeding....
In contrast to the testimony of plaintiff and his brother, Mr. Kenny Vincent testified that while he had seen the plaintiff in the bar on many occasions, he did not see the alleged fight or altercation. In fact, he testified that the first he learned of the alleged incident was when he was served with this law suit.
| ^Finally, Mr. Vincent testified that he contacted the Jefferson Parish Sheriffs Office about hiring an officer, or officers for detail work at the bar and the Sheriffs Office assigned Officer Kerwin to the detail. Officer Kerwin testified that although he was the officer regularly assigned to work detail duty at Kenny’s Key West, he did not know the plaintiff.
Furthermore, he testified that the alleged fight did not take place and had such an incident occurred, he would have arrested the individuals involved. Finally officer Kerwin testified that he was the only officer assigned to detail duty at Kenny’s Key West. However, the court notes that Mr. Vincent testified that generally there were two officers working detail duty on the weekends and the court further notes that the plaintiff alleges that this incident took place on a weekend.
* # *
... For the following reasons, the court finds Mr. Lamkin’s version of the events to be correct. First, Officer Ker-win’s testimony was not credible. Although Mr. Lamkin frequented defendant’s, Kenny’s Key West and officer Kerwin was the officer regularly assigned to work the detail at the bar, officer Kerwin claimed that he had never seen Mr. Lamkin at the bar at any time.
The court finds that this statement casts doubt on the varsity [sic] of his entire testimony. Secondly, defendant, Kenny Vincent’s testimony was not credible. Unlike officer Kerwin, Mr. Vincent at least admitted that he had seen Mr. Lamkin at the bar on prior occasions.
However, like officer Kerwin, he too denied seeing any altercation involving Mr. Lamkin. The court did not find this testimony to be credible because Mr. Lamkin was emphatic in his testimony that Mr. Vincent grabbed him from behind, asked him to leave the bar, pushed him into the parking lot and was present while he was battered and assaulted.
Thirdly, Mr. Lamkin’s testimony was credible. He candidly admitted that he was drinking on the night in question .... [0]n all major issues, his testimony has been consistent_And, immediately after the incident, while still at the emergency room ..., he told [his mother] it was officer Kerwin [who had hit him].
*774 ... [W]hile the defendants assert that Mr. Lamkin’s testimony at trial differed from his deposition testimony, the defendants did not offer any portion of the deposition into evidence. Therefore there is no evidence before the court of this alleged contradictory statement....
|7... [T]he court finds that ... the defendant’s conduct was a cause in fact of Mr. Lamkin’s injuries. Mr. Lamkin testified that Mr. Vincent pushed him into the parking lot, saw the entire altercation and took no steps to stop it.... ... [Wjhile Mr. Vincent denied that he saw the altercation, the court did not find his testimony on this issue to be credible. Finally, the court notes that the evidence revealed that at least one of the persons who assaulted and battered Mr. Lamkin was working a detail assignment on the defendant’s premises....
[[Image here]]
[I]t is foreseeable that patrons drinking at a bar would get into a fight. And, while Mr. Vincent and Officer Kerwin denied having any knowledge of this pri- or incident at the bar and/or in the bar’s parking lot, their testimony on this issue was not credible.
FIRST ASSIGNMENT OF ERROR: The trial court erred in placing a duty on defendants without having found that plaintiffs injuries were foreseeable.
According to the trial court’s reasons for judgment, the court found specifically that, under the particular circumstances of this case, Lamkin’s injuries were foreseeable.
Defendants rely on the fifth circuit’s holding in St. Pierre v. Lombard, 512 So.2d 1206 (La.App. 5 Cir.1987) granting summary judgment in favor of a school board that had been sued by a student who had been stabbed fatally at a football game. However, in that case, the court clearly held:
[Tjhis duty to protect [patrons] does not extend to the unforeseeable or unanticipated acts of an independent third person. 512 So.2d at 1209.
The distinction from the case at bar is twofold. First, the trial court in the instant case found as a matter of fact, amply supported by the record, that Kenny’s and | /Vincent reasonably could foresee that an altercation of the type in this case could take place, particularly where Vincent himself pushed Lamkin out of the door to the bar and watched the altercation take place. Here, there is evidence, accepted by the trier of fact as credible, that Vincent and, through him, Kenny’s had specific knowledge of the potential danger. See, St. Pierre, 512 So.2d at 1209.
Defendants correctly point out that duty is a question of law, and that there is generally no duty to protect others from the criminal activities of third persons. Posecai v. Wal-Mart Stores, Inc., 99-1222 p. 5 (La.11/30/99), 752 So.2d 762, 766, discussing Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984). While Posecai set forth the balancing test to be applied to determine whether a business owner has a duty to provide security ab initio, the instant case is strikingly similar to and, we believe, governed by the supreme court’s result in Harris. As noted in the concurring opinions in Dye v. Schwegmann Bros. Giant Supermarkets, Inc., 627 So.2d 688, 698 (La.App. 4 Cir. 1993) and Caronia v. McKenzie’s Pastry Shoppes, 97-0681 p. 2-3 (La.App. 4 Cir. 10/1/97), 700 So.2d 1315, 1320:
In the Pizza Hut case the security guard precipitated a shoot-out in a fast food outlet resulting in the death of one patron and the severe wounding of another. There is a big difference be *775 tween a security guard who creates a violent confrontation and one who merely fails to prevent a random act of violence from occurring.
* * *
The complaint in Pizza Hut was not that the business owner failed to prevent crime, but that the business owner’s guard actually precipitated the violence which led to customer injury. Thus the breach of duty in Pizza Hut was a duty not to endanger the customers. Pizza Hut should have been found liable based upon its general duty not to cause injury to its patrons. The duty not to | ^injure in Pizza Hut was not a voluntarily assumed duty, but a duty imposed by law.
The reasoning set forth in these concurring opinions was reflected by the supreme court in footnote 7 to its opinion in Pose-cai:
We reject the court of appeals’ finding that Sam’s assumed a duty to protect its patrons from crime when it hired a security officer to guard its cash office. This finding relies on an erroneous interpretation of our decision in Hams [citation omitted]. Pizza Hut does not stand for the proposition that a business assumes the duty to protect its customers from the criminal acts of third persons merely because it undertakes some security measures. Rather, Pizza Hut was an ordinary negligence case, holding that a security guard employed by a business must exercise reasonable care for the safety of the business’ patrons and breaches that duty when his actions cause an escalation in the risk of harm. In Pizza Hut, the restaurant’s security guard was negligent because he heightened the risk of harm to Pizza Hut’s customers by provoking gunfire from armed robbers who had entered the restaurant. Posecai fn. 7 at p. 10, 752 So.2d at 769.
The viable complaint in the instant case, as in Pizza Hut, is for violation of Kenny’s and Vincent’s duty not to cause injury to their patrons. The Supreme Court made clear in Posecai that a balancing test is to be used in deciding whether a business owes a duty of care to provide security to protect its customers from the criminal acts of third parties, by which the foreseeability of the crime risk on the defendant’s property and the gravity of the risk determine the existence and extent of the defendant’s duty. However, in the instant case, the issue is not whether Kenny’s and Vincent had a duty to provide security. Here, a security officer was provided, and the bar owner himself was an active participant in the altercation in which Lamkin sustained his injuries.
This assignment of error is without merit.
J^SECOND ASSIGNMENT OF ERROR: The trial court erred in finding defendants liable for the actions of a Jefferson Parish Sheriffs Deputy.
Defendants contend that the trial court erred in imposing liability on them absent their knowledge that an altercation was imminent. We note the trial court’s finding, based upon a supporting record, that Vincent pushed Lamkin into the parking lot and took no action to deter Kenny’s security personnel from the actions that contributed to Lamkin’s injuries. The record supports the conclusion that, at the time Vincent pushed Lamkin into the parking lot, and as he watched the ensuing fight among Lamkin, the bar patrons in the lot, and the deputy or deputies, Vincent knew or should have known that the fight was not only imminent but also actually and presently taking place. As we noted in our discussion of Caronia, the issue in this case is not foreseeability, although there is ample evidence of that, but *776 a breach of Kenny’s and Vincent’s legal duty not to injure the bar’s patrons.
We note that the trial court was careful to apportion the damages among the various parties to the altercation, and did not cast Kenny’s or Vincent for the 60% of damages it attributed to the actions of the deputy or for the 10% of damages it attributed to the other bar patrons.
This assignment of error is without merit.
J^THIRD ASSIGNMENT OF ERROR: The trial court erred in imposing liability on defendant Vincent, who at most witnessed the intentional act of a third party police officer on public property.
Defendants argue that they fully discharged their duty to Lamkin by calling the Jefferson Parish Sheriffs Office to the scene of the fight, and to the extent that the deputies caused injury to Lamkin, that liability should have been borne by the parish or the deputies themselves. This argument is directly addressed by the trial court’s apportionment of the bulk of the liability to the deputy or deputies (60%) and the other bar patrons (10%). As we read the trial court’s findings of fact and conclusions of law, the judgment imposed 30% liability on Kenny’s and Vincent for Vincent’s direct actions in pushing his customer out of the bar and then watching while the fight took place in Kenny’s parking lot.
This assignment of error is without merit.
CONCLUSION AND DECREE
For the foregoing reasons, we affirm the judgment of the trial court and assess the costs of this appeal to the appellants, Kenny’s Key West and Kenneth Vincent.
AFFIRMED.

. The trial court’s order is signed and dated as of 1 March 1998; however, this apparently is a clerical error. The motion and order is date stamped 1 March 1999, and the supplemental petition being dismissed had not been filed until May, 1998.