[ ¡jPlaintiffs-appellants, Richard L. Rubin and Mary Rubin (“the Rubins”), appeal the trial court’s May 29, 2015 judgment granting two motions for directed verdict filed by their property insurer, defendant-appel-lee, The American Insurance Company (“AIC”). For the reasons that follow, we affirm the judgment of the trial court.
In their appeal, the Rubins contend that the trial court erred in granting AIC’s motions for directed verdict as to the Rubins’ following claims:[1] (1) that AIC is liable for the Rubins’ medical expenses and general damages arising out of Paramount Remodeling and Roofing Corp.’s (“Paramount”) defective roof repairs to. their home under the theory of vicarious liability; and (2) that AIC, ptc-NET, Inc. (“ptc-NET”) and Paramount are engaged in a joint venture, and thus, AIC is liable for the Rubins’ medical expenses and general damages arising out of Paramount’s defective roof repairs under, the theory of joint venture liability.
UBased up.on the designated appellate record before this Court, the procedural and factual , posture of this casé is as follows:
On February 25, 2002, the Rubins filed a petition against AIC, Paramount and its insurer, and C & G Construction of Louisiana,[2] alleging that the Rubins sustained property damage to their home and its contents arising out of defective roof repairs performed by Paramount and other contractors, in their lawsuit, the Rubins alleged that, during the summer of 2000, they filed a claim with AIC under their homeowners’ policy to repair roof damage caused by a hail storm that occurred in January of 2000. The Rubins further alleged that AIC’s claims adjustor, Jim Planchard, gave them the option of choosing their own roofer to perform the roof repairs, or of allowing AIC to provide them with a roofer and that AIC would, “be responsible” for the roofer it provided. After agreeing to allow AIC to provide a roofer for the necessary repairs, the *411 Rubins alleged that AIC selected Paramount to repair the hail damage.
On October 6, 2000, Paramount completely removed the Rubins’ damaged roof, placed felt paper over the Rubins’ home, and stated that Paramount would return the next day to complete the roof repairs. However, the Rubins alleged that Paramount did not return to their property after removing their damaged roof, and that on October 8, 2000, it began raining for several days, causing extensive water damage to the interior of their home. The Rubins alleged that subsequent attempts by Paramount and other contractors to repair the roof were unsuccessful, and led to | ¿further water damage, including mold contamination. The Rubins, later alleged that they suffered personal injuries caused by mold contamination in their home.[3]
The Rubins’ claims against AIC ultimately proceeded to a seven-day jury trial from May 11, 2015 to May 20,2015, wherein the Rubins only sought to recover medical expenses and general damages sustained as a result of their alleged mold-related illnesses.[4]
At trial, the Rubins called Tim McWatt, a technical director at Fireman’s Fund .Insurance Company (“FFIC”), which is the parent company of AIC., McWatt testified regarding a three-month pilot program that FFIC entered into in September of 1999 with a company called Project Time & Cost, Inc, (“PTC”), McWatt explained that the program was part of the Direct Contractor Repair Program, wherein PTC would pre-screen the contractors within its network and assign them to claims submitted to PTC by FFIC. In September, of 1999, FFIC and PTC executed ■ a letter agreement (“the 1999 Agreement”) regarding the program, which provided that “[i]n order to determine if it is mutually benéfi-cial for us to enter into a long-term business relationship, we will need to. work together on ah initial engagement of 1,000 claims (or three months, whichever comes first).”
Under the 1999 Agreement, PTC would provide a desk review of the contractors’ estimates and documentation, forward the claims to FFIC for final approval and adjustment, and then issue a work order to the assigned contractor. The 1999 Agreement provided as follows:
No agency, partnership, joint venture or other similar relationship is intended by this engagement. This is the full and complete agreement ^between us and any modifications or additions must be documented in a written and sighed memorandum.
McWatt testified that the 1999 Agreement expired in December of 1999, but explained that the Rubins’ claim, although filed in the year 2000, was handled under the 1999 Agreement. He further explained that during the year of 2000, FFIC never executed a contract with PTC or ptc-NET[5]. Ultimately, however, in March *412 of 2001 FFIC entered into a contract with PTC titled the ptc-NET Service Agreement.
On January 10, 2000, Paramount and ptc-NET executed a contract titled the ptc-NET Master Contract (“the ptc-NET/Paramount contract”), wherein Paramount became part of the ptc-NET network of contractors upon payment of a network fee of $6,000. Under the ptc-NET/Paramount contract, Paramount was required to furnish “all labor, materials, tools, equipment, and other requirements to perform the work as specified in such WORK ORDERS as may be issued by “Insurer” through ptc-NET on an as-needed basis.” Additionally, Paramount agreed to be bound by a set of “Contract Documents,” which included “General Terms and Conditions.”
Jim Planchard testified that when he met with the Rubins in the summer of 2000 regarding their hail damage claim, he told them about a new program that FFIC/AIC was rolling out called the direct contractors repair program. He told the Rubins that they could choose their own roofing contractor, or that AIC would refer one to them through this program and that FFIC/AIC “would stand behind the work product.” The Rubins agreed to allow AIC to refer a roofer, and Paramount was subsequently assigned to the Rubins’ claim. The Rubins and Paramount signed a “Property Owner’s Authorization,” authorizing Paramount to perform the 17work described in the attached “Work Order.” However, the “Work Order” signed by Dr. Rubin did not provide any details regarding the work to be performed by Paramount.
Dr. Rubin testified that on October 6, 2000, Paramount removed their hail-damaged roof, but left the roof unfinished. It subsequently rained, causing extensive water damage to their home. Paramount returned to the Rubins’ home and replaced their roof in November of 2000. However, Dr. Rubin testified that that roof failed during a rainstorm later that same month, causing further water damage to the interior of their home, and ultimately, mold contamination.
At the close of the Rubins’ case in chief, AIC moved for directed verdicts as to the Rubins’ claims against AIC based upon vicarious liability and joint venture liability.[6] Specifically, AIC .argued that the Rubins failed to present any evidence showing that AIC controlled the work of the contractors it referred to the Rubins, such that AIC could be found to have been the employer of those contractors for purposes of vicarious liability. As to the Rubins’ joint venture liability claim, AIC argued that the Rubins failed to present any evidence of a business venture carried out for a joint profit among FFIC/AIC, PTC, ptc-NET, and Paramount. The trial court granted AIC’s motions for a directed verdict as to the Rubins’ vicarious liability and joint venture claims, and rendered a judgment in favor of AIC as to those claims on May 29, 2015.[7] The Rubins’ appeal of that ruling now follows.
*413 LAW AND DISCUSSION
A motion for a directed verdict is a procedural device available in trials by jury with an eye toward judicial economy. Reed v. Columbia/HCA Info. Sys., Inc., 00-1884 (La.App. 5 Cir. 4/11/01), 786 So.2d 142, 146, writ denied, 01-1384 (La.6/22/01), 794 So.2d 796. The motion is appropriately made at the close of the evidence offered by the opposing party and should be granted when, after considering all of the evidence in the light and with all reasonable inferences most favorable to the movant’s opponent, it is clear that the facts and inferences point so overwhelmingly in favor of granting the verdict, that reasonable jurors could not arrive at a contrary result. Id. However, if there is evidence produced in opposition to the motion that has such quality and weight that reasonable' and fairminded men, exercising impartial judgment, might reach different' conclusions, then the motion should be denied and the case should be submitted to the jury. Id.
The trial court has much discretion in determining whether or not a motion for a directed verdict should be granted. Joseph v. Cannon, 609 So.2d 838, 843 (La.App. 6 Cir.1992), writ denied, 623 So.2d 1330 (La.1993), cert. denied, 510 U.S. 1097, 114 S.Ct. 935, 127 L.Ed.2d 226 (1994). The standard of review for. the appellate court is whether, viewing the evidence submitted, reasonable people could not reach a contrary result. Reed, supra at 146. Moreover, the propriety of a directed verdict must be evaluated in light of the substantive law related to the claims. Id.
In this case, the Rubins sought to establish AIC’s liability for their injuries on the grounds that AIC is vicariously liable for Paramount’s negligence because Paramount was AIC’s employee, and on the grounds that AIC is liable for Paramount’s negligence as Paramount’s joint venture partner.

Vicarious Liability Claim

The concept of vicarious liability is codified in La. C.C. art. 2320, which provides the basis for holding an employer liable for the negligent acts of his employees. Roberts v. State, 404 So.2d 1221, 1225 (La.1981). Under La. C.C. art. 2320, “Masters and employers are answerable for damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.” To come within the scope of La. C.C. art. 2320, .the plaintiff must show the existence of an employer-employee relationship. Id. In evaluating the sufficiency of such proof, courts have been mindful that, by its nature, vicarious liability, mandates strict construction.. Id.; Collins v. Home Depot, U.S.A., Inc., 15-199 (La.App. 5 Cir. 12/9/15), 182 So.3d 324, 330. The Louisiana Supreme Court has held that- the single most important factor to consider- in determining whether the -employer-employee relationship exists for the purposes of vicarious liability is the right of the employer to control the work of the employee. Id.
In their appeal, the Rubins contend that the trial court erred in granting a directed verdict as to their vicarious liability claim because the following evidence admitted at trial establishes that AIC had the right to control Paramount’s work performed at their home: (1) the ptc-NET/Paramount contract; and (2) the General Terms and Conditions referenced in the ptc-NET/Paramount contract. However, the only parties to the ptc-NET/Paramount contract, which references the General Terms and Conditions, are ptc-NET and Paramount — not AIC or FFIC.
*414 McWatt testified that the Rubins’ claim was handled under the 1999 Agreement. However, the 1999 Agreement was executed solely between FFIC and PTC, and does not purport to give AIC/FFIC the right of control' over Paramount, or over any other contractors within PTC’s network. Although FFIC ultimately signed'a contract with PTC in March of 2001, after Paramount completed its work at the Rubins’ home in November of 2000, that contract specifically provides that FFIC does not have the right of control or supervision of PTC, PTC’s staff, or any contractors within its network:
^RELATIONSHIP OF PARTIES.
This Agreement is not intended to and shall not create a partnership, joint venture or business entity of any kind between the parties, nor shall it make either party the employee, agent, claims adjuster.or representative of-the other party. - [PTC] shall act in the capacity of ■an independent contractor in providing and performing the Services described in this Agreement. Neither [PTC], [PTC] staff, nor any persons or entities comprising the Network shall be subject to the direction, control or supervision of [FFIC] with respect to the accomplishment, provision, performance or fulfillment of such Services, or any work connected with such Services.
In addition, the Rubins rely upon an FFIC manual and a Power Point presentation titled “Direct Repair Contractor Program,” in support-of their argument that FFIC/AIC had the right of control over Paramount’s work. However, the Rubins have failed to show that the FFIC manual and Power Point slides are in any way binding upon Paramount for purposes of establishing the right of FFIC/AIC to control Paramount’s work.
Our review of the designated record shows that the Rubins failed to offer any evidence at trial of a contract between AIC/FFIC and Paramount, or any other evidence, establishing that AIC/FFIC had the right to control Paramount’s work at the Rubins’ home for purposes of an employer-employee relationship between AIC/FFIC and Paramount. After reviewing the evidence submitted in the designated record, in light of the substantive law regarding vicarious liability, we find that reasonable persons could not have reached a contrary result as to the Rubins’ vicarious liability claim against AIC. The Rubins, simply did not meet their burden of proof in establishing an employer-employee relationship between AIC and Paramount. Therefore, we find no error in the trial court’s grant of ÁIC’s motion for directed verdict as to the Rubins’ vicarious liability claim.

Joint Venture Liability Claim

The essential elements of a joint venture are generally the same-as those of a partnership, e,g., two or more parties combining their property, labor, skill, etc., in | nthe conduct of the venture for joint profit or benefits, with each having some right of control. First Bank & Tr. v. Treme, 13-168 (La.App. 5 Cir. 10/30/13), 129 So.3d 605, 612 (citing Kelly v. Boh Bros. Const. Co., 96-1051 (La.App. 5 Cir. 4/9/97), 694 So.2d 463, 468). Joint ventures arise only where the parties intended the relationship to exist, and they are ultimately predicated upon contract, either express or implied. Id. (citing Broadmoor, L.L.C., v. Ernest N. Mortal New Orleans Exhibition Hall Authority, 04-0211 (La.3/18/04), 867 So.2d 651, 663). There must bé a sharing of the profits and losses with each party having some right of control over the business. Glass v. Berkshire Dev., 612 So.2d 749, 751 (La.App. 5 Cir. 1992) (citing Riddle v. Simmons, 589 So.2d 89 (La.App. 2 Cir.1991)).
In their appeal, the Rubins allege that the evidence shows that AIC, ptc- *415 NET and Paramount were engaged in a joint venture. Our review of the evidence, however, shows that both the 1999'Agree-ment between FFIC and PTC, under which the Rubins’ claim' was handled, and the 2001 contract between FFIC and PTC, specifically provide that no‘“partnership" or “joint venture” was intended by the parties to the respective agreements. Moreover, as we have already found herein, the Rubin^ have.failed to present any evidence of a contract or agreement between AIC/FFIC and Paramount. Nor do we find that the Rubins have presented any evidence of a sharing of profits and losses among FFÍC/AIC, PTC, ptc-NET, or Paramount.
Based upon our review of the evidence submitted in the designated record, in light of the substantive law regarding joint ventures, we find that reasonable persons could not have reached a contrary result as to the Rubins’ joint venture liability claim against AIC. The Rubins failed to meet their burden of proof in establishing a joint venture among FFIC/AIC, PTC, ptc-NET, or Paramount. | ^Accordingly, we find no error in the trial court’s grant of AIC’s motion for directed verdict as to the Rubins’ joint venture liability claim.
CONCLUSION
Based upon the designated record on appeal, and for "the foregoing reasons, we affirm the May 29, 2015 judgment of the trial court granting AIC’s motions for directed verdict as to the Rubins’ claims of vicarious liability and joint venture liability, and rendering a judgment in favor of AIC and against the Rubins as to those claims.

AFFIRMED

. The Rubins’ appellate brief contains a request that this Court reverse the trial court’s award of costs to AIC “to be considered anew after, the new trial.” However, the Rubins have failed to brief this issue within the body of their brief, nor have they assigned this issue as error within their assignments of error. Under- Rule 2-12.4 of the Uniform Rules of Courts of Appeal, appellate briefs must contain an assignment of errors, as well as an argument briefing each assignment of error, and any arguments that are not briefed within the body of an appellate brief are considered abandoned. See Murphy v. 1st Lake Props., 12-649 (La.App. 5 Cir. 5/23/13), 116 So.3d 964, 967 n. 3 (citing U.R.C.A, Rule 2-12,4). Accordingly, the issue of the .trial court’s-award of costs to AIC is considered abandoned.

. Paramount, Paramount’s insurer, and C & G Construction of Louisiana aré not parties to this appeal. According to the designated record, the Rubins also filed four supplemental petitions naming various contractors and insurers, and ptc-NET, Inc. as additional defendants, none of whom are parties to this appeal. The designated record does not show that the Rubins' claims against any of the foregoing defendants were litigated at the trial at issue in this appeal, nor does it show the status of the Rubins’ claims against those defendants, other than AIC’s counsel’s statement during trial that the claims against Paramount and C & G have been settled.

.Although not contained within the designated record, at some point in the litigation, Dr. Rubin’s brother, Alan Rubin, intervened in the Rubins’ petition against AIC, also alleging personal injuries caused by mold damage while he was living in the Rubins’ home. The designated record shows that Alan Rubin’s claims against AIC were also addressed at the trial at issue; however, he is- not a parly to this appeal.

. At trial, on May 19, 2015, the Rubins withdrew all of their claims against AIC for property damage to their home and for damage to property within their home, reserving only their claims for medical expenses and general damages.

. Ptc-NET, is a subsidiary of PTC who had the responsibility under the program to administer a network of contractors and related technology for property claims damage evaluation and restorative services.

. AIC also moved for directed verdicts as to the Rubins' claims against it for oral warranty, detrimental reliance, breach of contract, breach of good faith, and negligence. However, those motions are not subject to this appeal.

. In the May 29, 2015 judgment, the trial court also granted AIC’s motions for directed verdict as to the Rubins’ claims for oral warranty, detrimental reliance, breach of contract, and breach of good faith, but denied AIC’s motion as to the Rubins’ negligence claim. The jury determined the Rubins’ negligence claim, and found no negligence on the part of AIC. None of these rulings are subject to this appeal.